737 So.2d 426 (1999)
Jacqueline Sullivan DORMAN, Jack Sullivan and Mary Ann Sullivan, Appellants,
v.
Bryan DORMAN, Wayne Dorman and Wife, Deborah Dorman, Appellees.
No. 98-CA-00258-COA.
Court of Appeals of Mississippi.
February 23, 1999.
*428 Thomas L. Booker, Jr., Laurel G. Weir, Philadelphia, Attorneys for Appellants.
Scott A.C. Johnson, Philadelphia, Attorney for Appellees.
BEFORE BRIDGES, C.J., COLEMAN, IRVING, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court on appeal of the judgment of the Chancery County of Neshoba County by Jackie Dorman and her parents Jack and Mary Ann Sullivan challenging the denial of divorce and the award of custody of the minor child to the paternal grandparents and the denial of visitation rights for Jackie. Specifically, Jackie and her parents raise the following four issues for our review:
I. WHETHER THE CHANCELLOR ERRED IN NOT GRANTING JACKIE A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT AND UNCONDONED ADULTERY
II. WHETHER THE CHANCELLOR ERRED IN NOT GRANTING JACKIE CUSTODY OF THE MINOR CHILD
III. WHETHER THE CHANCELLOR ERRED IN PLACING CUSTODY OF MINOR CHILD WITH PATERNAL GRANDPARENTS
IV. WHETHER THE CHANCELLOR ERRED IN NOT GRANTING JACKIE VISITATION WITH THE MINOR CHILD
On review of the record and the briefs filed by both parties, we reverse and remand for further action consistent with this opinion.

FACTS
¶ 2. Jackie Sullivan Dorman and Bryan Dorman were married on December 9, 1994. The union produced one child, a son, Ryan Scott Dorman, born June 4, 1995. On November 1, 1996, Bryan filed for divorce from Jackie on the grounds of adultery, habitual cruel and inhuman treatment, and irreconcilable differences. Bryan sought, inter alia, primary custody of the minor child and child support from Jackie, an equitable division of marital property, and attorney's fees. Jackie filed her answer and cross-complaint for divorce on November 11, 1996. In her pleadings, Jackie sought divorce from Bryan on the same three grounds as Bryan alleged in his petition, and she sought the same relief as Bryan. The chancellor conducted a hearing for pendente lite relief regarding the custody and support of the minor child and placed the child in the temporary custody of Jackie. Bryan was granted visitation for three day intervals every seven days.[1] In addition, Bryan was ordered to pay temporary child support in the amount of $75 per month.
¶ 3. Subsequently, a two day trial on the merits was conducted on May 29, 1997 and November 24, 1997. After the first day of trial on May 29, 1997, the chancellor, in a July 11, 1997 order, found that neither Jackie nor Bryan was entitled to a divorce because both had engaged in adulterous affairs, and he found that based on their personal conduct, specifically their use of drugs, that neither Jackie nor Bryan was fit to have custody of the minor child. On *429 August 5, 1997, the minor child's paternal grandparents moved to intervene in the action, seeking custody of the minor child based on the chancellor's July 11, 1997 order. On August 31, 1997, the minor child's maternal grandparents filed pleadings seeking to deny the paternal grandparents' motion to intervene and requesting that they be allowed to intervene and be awarded custody of the minor child. After the second day of trial, the chancellor issued an order on December 10, 1997, awarding custody of the minor child to the paternal grandparents with reasonable visitation rights for the maternal grandparents and no visitation rights for Jackie. Subsequent to this order, the chancellor issued another order on December 29, 1997, requiring both Jackie and Bryan to pay $100 per month in support of the minor child to the custodial grandparents. From these actions by the chancellor flowed this appeal.

STANDARD OF REVIEW
¶ 4. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175, 1177 (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. Glass v. Glass, 726 So.2d 1281, 1284 (Miss.Ct.App.1998) (citing Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989)). Further, the polestar consideration in child custody decisions is the best interest and welfare of the child. Whittington v. Whittington, 724 So.2d 922, 924 (Miss.Ct.App.1998) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)).

ANALYSIS AND DISCUSSION OF LAW

Issue I: Denial of Divorce
¶ 5. Jackie's first assignment of error alleges that the chancellor erred in denying her a divorce on the grounds of adultery and habitual cruel and inhuman treatment. After review of the record, the briefs of both parties, and the applicable precedents, we reverse and remand for further findings of fact and conclusions of law as set forth below.
¶ 6. We begin with the general rule that a chancellor's denial of a divorce will not be disturbed on appeal absent our determination that the lower court was manifestly wrong as to law or fact. Benson v. Benson, 608 So.2d 709, 710 (Miss. 1992) (citing Chaffin v. Chaffin, 437 So.2d 384 (Miss.1983)). But, the chancellor's failure to articulate sufficiently specific findings of fact and conclusions of law may in itself constitute manifest error. See generally Sandlin v. Sandlin, 699 So.2d 1198, 1204 (Miss.1997).
¶ 7. Turning to Jackie's faultbased grounds for a divorce, we first address her adultery claim. Our statutory law provides that adultery is a valid ground for dissolving the matrimonial bonds with two exceptions: where it appears the adulterous activity was done in collusion to gain a divorce or unless the parties cohabited after the ascertaining knowledge of the alleged adultery. Miss. Code Ann. § 93-5-1(2) (Supp.1998). Where adultery is alleged, the chancellor is required to set forth specific findings of fact and conclusions of law in this regard. Holden v. Frasher-Holden, 680 So.2d 795, 798 (Miss.1996) (citing McAdory v. McAdory, 608 So.2d 695, 699 (Miss.1992); Dillon v. Dillon, 498 So.2d 328, 330 (Miss. 1986)). A charge of adultery may be established *430 by showing 1) an adulterous inclination coupled with 2) an opportunity to consummate the inclination. Holden, 680 So.2d at 798 (citing Owen v. Gerity, 422 So.2d 284, 287 (Miss.1982)). The inclination may be proven by showing either 1) an infatuation with a particular person or 2) a general adulterous propensity. Holden, 680 So.2d at 798 (citing McAdory v. McAdory, 608 So.2d 695, 700 (Miss.1992)). Where the accusing spouse relies on circumstantial evidence to support allegations of infidelity, the accuser carries a heavy burden of convincing the trier of fact of the accused adulterer's guilt through logical evidence tending to prove the allegation that is inconsistent with a reasonable theory of innocence; however, the proof need not be beyond a reasonable doubt, and direct evidence is not required given the inherently secretive nature of adulterous relationships. Owen, 422 So.2d at 287 (citing and quoting Banks v. Banks, 118 Miss. 783, 79 So. 841 (1918)); Rodgers v. Rodgers, 274 So.2d 671, 673 (1973).
¶ 8. With regard to Jackie's claim of habitual cruel and inhuman treatment, Mississippi precedent has addressed this issue on numerous occasions and is well-settled. Habitual cruel and inhuman treatment may be established by demonstrating conduct that threatens the life, limb, or health of the party seeking relief, or by showing the conduct is so unnatural and infamous as to make disgusting and revolting to the non-offending spouse the discharge of marital duties, which erases the basis for the union. Richard v. Richard, 711 So.2d 884, 888 (Miss.1998); Bowen v. Bowen, 688 So.2d 1374, 1378 (Miss. 1997); Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993); Gardner v. Gardner, 618 So.2d 108, 113-14 (Miss.1993). As a general rule, the habitual cruel and inhuman treatment must be shown to be routine and continuous; however, a single occurrence may be grounds for a divorce on this ground. McKee v. Flynt, 630 So.2d 44, 48 (Miss.1993); Robinson v. Robinson, 554 So.2d 300, 303 (Miss.1989); Ellzey v. Ellzey, 253 So.2d 249, 250 (Miss.1971). The requisite essential behavior may be established by a preponderance of the evidence. Smith v. Smith, 614 So.2d 394, 396 (Miss. 1993).
¶ 9. Under the common law doctrine of recrimination, if each party to a marriage had adequate grounds on which to have a divorce, neither party was entitled to a divorce. This equitable doctrine "is founded on the basis that the equal guilt of a complainant bars his/her right to divorce, and the principal consideration is that the complainant must come into court with clean hands." Parker v. Parker, 519 So.2d 1232, 1235 (Miss.1988) (citations omitted). The offenses committed by each spouse need not be the same, but both offenses must be of a nature sufficient to support a dissolution of the marriage. Id. Further,
Supporters of recrimination have not based their case solely on arguments of a legalistic nature. At least four policyoriented justifications of the doctrine may be found in judicial opinions: (a) [b]y rendering divorces more difficult to procure, recrimination promotes marital stability. (b) [t]he rule tends to deter immorality, since a spouse is less likely to commit adultery (or any other marital offense) if he knows that his misdeed may bar him from obtaining a divorce at some future time. (c) [t]he doctrine serves to protect the wife's economic status. (d) [r]ecrimination prevents persons who are obviously poor marriage risks from being freed to contractand probably ruinanother marriage. These reasons for recrimination offered are impractical and fail with the mores of present times ...
Id. at 1235-36.
¶ 10. However, since 1964 there has been a statutory basis in Mississippi for a chancellor not to be bound by the harsh recrimination doctrine. The relevant statute provides: "[i]f a complainant or cross-complainant in a divorce action shall prove grounds entitling him to a divorce, *431 it shall not be mandatory on any chancellor to deny such party a divorce, even though the evidence might establish recrimination on the part of such complainant or cross-complainant." Miss.Code Ann. § 93-5-3 (Supp.1998).
¶ 11. Having set forth the applicable law, we now turn to the chancellor's decision. After the first day of trial, the chancellor issued an order denying Bryan and Jackie a divorce because of his finding that both had engaged in adultery, but that is all the chancellor provides, his conclusion. He cited no legal authority nor did he give any findings of fact to support his decision. We find no discussion of the recrimination doctrine in the chancellor's July 11, 1997 order denying the divorce. While we do not require so-called "magic" words, we do require enough words indicative of the basis for the chancellor's decision.
¶ 12. As stated above, the chancellor's failure to articulate specific findings of fact and conclusions of law may, alone, constitute manifest error. See generally Sandlin v. Sandlin, 699 So.2d 1198, 1204 (Miss. 1997). The chancellor undoubtedly knew his factual basis and legal reasons for denying the divorce. However, in order for us to properly assess the lower court's ruling, we must have before us in the record his basis for his ruling. Only then can we pass judgment on that ruling. Since the chancellor here failed to provide us with adequate findings of fact and conclusions of law, we must remand this case for specific findings of fact and conclusions of law as to the factual basis for denying the divorce and the legal conclusions supporting that decision to deny the divorce. For guidance only to the lower court, we add that in the July 11, 1997 order, the chancellor did not at all address Jackie's claim of habitual cruel and inhuman treatment, even though testimony was provided at trial to this effect. While we do not pass judgment on Jackie's cruel and inhuman treatment claim, the chancellor should make specific findings of fact and conclusions of law in this regard on remand since there was testimony at trial in this regard.

Issue II, Issue III, and Issue IV:

Custody of the Minor Child
¶ 13. Jackie's and the Sullivans's assignments of error with regard to the chancellor's decision to deny Jackie permanent custody of the minor child, his decision not to award her any visitation rights, and his decision to award custody to the Dormans over the Sullivans are addressed here. It is well-settled that in child custody cases, the primary and overriding consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Relevant factors to be considered in identifying the most appropriate custodian for minor children include:
health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered....
Id.
¶ 14. With regard to the paternal grandparents being awarded custody over Jackie, "[g]randparents have no right of custody of a grandchild, as against a natural parent, a premise reflected in our frequent statements, in custody contests between a parent (or parents) and grandparents, the parent(s) prevail absent a showing they have abandoned the child or *432 are otherwise totally unfit." Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992) (citing Milam v. Milam, 509 So.2d 864, 866 (Miss.1987); Rutland v. Pridgen, 493 So.2d 952, 954-55 (Miss.1986); Owens, By and Through, Mosley v. Huffman, 481 So.2d 231, 242 (Miss.1985); Stoker v. Huggins, 471 So.2d 1228, 1229 (Miss. 1985); Thomas v. Purvis, 384 So.2d 610, 612-13 (Miss.1980); Pace v. Barrett, 205 So.2d 647, 649 (Miss.1968)).
¶ 15. Child custody proceedings are some of the most difficult decisions that chancellors and this Court must face and resolve. The chancellor noted in his order awarding custody to the paternal grandparents his rationale for his decision. However, in his July 11, 1997 order, the chancellor stated that his reason for declaring Jackie and Bryan unfit for the custody of the minor child was primarily their indulgence in drugs. While the chancellor undoubtedly had his reasons for this general statement, the testimony at trial did not seem to support such an indulgence by both parties sufficient to warrant a finding of unfitness based on the Albright factors quoted above. Both parties admitted consuming alcohol, and Bryan admitted smoking marijuana. Jackie denied using marijuana when asked the question by Bryan's attorney. Wayne Dorman testified that he had seen marijuana in the marital home on one visit, and that Jackie said that the drugs belonged to Bryan and her; Jackie denied this allegation. Further, the chancellor ordered both Jackie and Bryan to take a drug test; Jackie tested negative, while Bryan tested positive.
¶ 16. While we decline to pass judgment on whether or not the chancellor erred in determining that Jackie was unfit because of her indulgence in drugs, we remand for a clarification of the chancellor's findings in this regard as to Jackie's fitness to have custody of the minor child and any other evidence the chancellor relied on in making his determination of unfitness, based on the Albright factors as outlined above. Therefore, we postpone an assessment of whether the chancellor properly awarded custody to the paternal grandparents until a later date. However, as guidance only for the court below, we note that there were allegations at trial by Jackie that she and Bryan were told by Bryan's sister, Patricia, that Wayne Dorman had sexually abused her and her daughter, his granddaughter. We urge the chancellor on remand to address these serious allegations. Although Wayne denied these allegations, the seriousness of such allegations demand attention by the trial court since the Dorman home is where the minor child was placed. By addressing these allegations on this remand, we will have a complete record on which to assess this issue should it be necessary at a future time.
¶ 17. THE JUDGMENT OF THE NESHOBA COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR FURTHER ACTION CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TAXED ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEES.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, IRVING, KING, LEE, AND SOUTHWICK, JJ., CONCUR.
NOTES
[1] The temporary order gave Jackie custody of the minor child. Jackie was to have the child for six days, followed by three days with Bryan on a cyclical basis until the final disposition of the case.