MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. The Chancery Court of Copiah County granted Rose Jenkins a divorce from Edmond Jenkins on the ground of habitual cruel and inhuman treatment. Edmond appeals claiming the chancellor erred in rejecting his recrimination defense, which was based on Rose’s alleged adultery. Because we find sufficient evidence to support the chancellor’s determination that Edmond’s cruelty, not Rose’s adultery, caused the separation, we affirm the cruelty-based divorce.
 

 
 *1095
 
 FACTS
 

 ¶ 2. Edmond and Rose were married for approximately twelve years before separating in June 2006. They had two children from their marriage.
 

 ¶ 3. At trial, Rose testified that Edmond exhibited a pattern of cruel behavior. One incident in May 2006 involved Edmond locking Rose and the children out of the house. He also disconnected the spark plugs in her car, forcing Rose to contact a friend to pick up her and the children. Another incident occurred in June' 2006, soon after the two had separated, when Rose and the children visited Edmond at the marital home. After hugging his children and telling them goodbye, Edmond walked to the front porch, placed a noose around his neck, and tried to hang himself to death. His unsuccessful suicide attempt took place in front of the children. In another post-separation incident, Edmond argued with Rose while riding in a ear with her and the children. According to Rose, Edmond became so enraged that he opened the door and threatened to jump from the vehicle. Rose managed to pull the car to the side of the road without Edmond injuring himself. When Rose attempted to discuss divorce with Edmond, he told her the only way they would separate would be by death.
 

 ¶ 4. Rose filed for divorce in June 2006, soon after the hanging incident. She asserted the fault-based grounds of adultery and habitual cruel and inhuman treatment. Edmond counterclaimed alleging these same grounds. In Rose’s amended response to Edmond’s counterclaim, she admitted committing adultery since November 2007. Edmond later withdrew his counterclaim.
 

 ¶ 5. The chancellor granted Rose a divorce based on Edmond’s habitual cruel and inhuman treatment. He also awarded full custody of the children to Rose and ordered Edmond to pay child support. The chancellor concluded Edmond’s habitual cruelty was the proximate cause of the separation. Although the chancellor found Rose had committed adultery, he determined her adultery did not cause the separation.
 

 STANDARD OF REVIEW
 

 ¶ 6. Our review of domestic matters is limited.
 
 Morris v. Morris,
 
 804 So.2d 1025, 1027 (¶ 6) (Miss.2002). “[The appellate court] will not disturb the findings of a [c]hancellor unless the [chancellor is manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Bell v. Parker,
 
 563 So.2d 594, 596-97 (Miss.1990). For questions of law, our standard of review is de novo.
 
 Lawrence v. Lawrence,
 
 956 So.2d 251, 256 (¶ 12) (Miss.Ct.App.2006).
 

 DISCUSSION
 

 ¶ 7. Edmond does not contend insufficient evidence exists to grant Rose a divorce based upon his habitual cruel and inhuman treatment. His sole argument instead focuses on Rose’s adultery, which he claims bars her from obtaining a divorce.
 

 ¶ 8. Under the common-law doctrine of recrimination, if each party to a marriage proved a fault-based ground for divorce, then neither party was entitled to a divorce.
 
 Dorman v. Dorman,
 
 737 So.2d 426, 430 (¶ 9) (Miss.Ct.App.1999). The doctrine is “founded on the basis that the equal guilt of a complainant bars his/her right to divoree[.]”
 
 Parker v. Parker,
 
 519 So.2d 1232, 1235 (Miss.1988). And under the common-law principle, “the complainant must come into court with clean hands.”
 
 Id.
 
 For the doctrine to apply, “[t]he offenses committed by each spouse need not be the same,” but both spouses’ offenses must be sufficient to constitute grounds for divorce.
 
 Dorman,
 
 737 So.2d at 430 (¶ 9).
 

 
 *1096
 
 ¶ 9. But recrimination is no longer an absolute bar to divorce. In 1964, the Mississippi Legislature modified the common-law recrimination defense by enacting Mississippi Code Annotated section 93-5-3 (Rev.2004).
 
 Dorman,
 
 737 So.2d at 430 (¶ 10). Section 93-5-3 provides: “If a complainant or cross-complainant in a divorce action shall prove grounds entitling him to a divorce, it shall not be mandatory on any chancellor to deny such party a divorce, even though the evidence might establish recrimination on the part of such complainant or cross-complainant.” As a result, chancellors are no longer bound by the strictures of the common-law doctrine.
 
 Dorman,
 
 737 So.2d at 430 (¶ 10). Therefore, under Section 93-5-3, “one party’s adultery, even if established at trial, does not prevent the chancellor from granting a divorce to that party.”
 
 Dickerson v. Dickerson,
 
 34 So.3d 637, 643 (¶ 19) (Miss.Ct.App.2010).
 

 ¶ 10. This Court has further held: “There can be but one divorce granted.... Tn a situation where both parties are at fault, if a divorce is to be granted, the chancellor must determine which party’s conduct was the proximate cause of the deterioration of the marital relationship and the divorce itself.’ ”
 
 Garriga v. Garriga,
 
 770 So.2d 978, 983-84 (¶¶ 23-24) (Miss.Ct.App.2000) (quoting
 
 Hyer v. Hyer,
 
 636 So.2d 381, 384 (Miss.1994)).
 

 ¶ 11. In
 
 Parker,
 
 519 So.2d at 1236, the supreme court found a chancellor committed reversible error by denying a wife’s divorce on the ground of habitual cruel and inhuman treatment based on her own adultery. The court reasoned:
 

 While this Court is not suggesting con-donation of the conduct of the appellant wife after the separation of the parties, when we balance out the uncontradicted evidence that the conduct of the appellee was responsible for the separation of the parties and the dissolution of their marriage; that the misconduct of the appellant wife occurred after the destruction of the marriage; and that the [Legislature has, in the least, greatly weakened the defense of recrimination; we are of the opinion that the learned chancellor erred in denying a divorce to [the] appellant[J
 

 Id.
 

 ¶ 12. More recently in
 
 Langdon v. Langdon,
 
 854 So.2d 485, 490 (¶¶14, 16) (Miss.Ct.App.2003), this Court upheld a chancellor’s decision to grant a divorce to a wife based on her husband’s habitual cruel and inhuman treatment, despite her own “undenied, uncondoned adultery.” Because the evidence showed the husband’s cruelty, and not the wife’s adultery, caused the separation, this Court affirmed the chancellor’s judgment.
 
 See id.
 

 ¶ 13. Here, the chancellor rejected Edmond’s recrimination defense and found:
 

 [Edmond] put on evidence that [Rose] had more than one adulterous affair as early as the year 2006. Obviously the evidence was put on to either condone [Edmond’s] behavior toward his wife or to challenge the cause of the failed marriage. However, [Edmond] admits that he did not learn of [Rose’s] affairs until November or December of 2007, and [Rose] denies any such behavior prior to [then]. From the evidence, the court can’t find that it was [Rose’s] behavior which caused the ... separation.... [T]he Court is satisfied from the evidence that [Edmond] is guilty of habitual cruel and inhuman treatment toward[ ] his wife, and that his conduct is the proximate cause of the ... separation.
 

 ¶ 14. Though Edmond resolutely asserts Rose engaged in adultery before the parties separated, he fails to point out specific evidence to support his claim. Edmond directs our attention to Donna
 
 *1097
 
 Bryant’s testimony that Rose had been romantically involved with several men. Bryant began baby-sitting the children in March or April 2006, slightly before the separation. But Bryant did not testify that Rose had committed any adulterous acts before the separation.
 

 ¶ 15. The evidence is scant that Rose engaged in any adulterous conduct prior to the separation. Equally lacking is proof that her adulterous conduct proximately caused the parties’ separation. Under these facts, we find the chancellor did not manifestly err in rejecting Edmond’s recrimination defense and, therefore, affirm.
 

 ¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ„ CONCUR.