LEE, C.J.,
concurring in part and dissenting in part:
¶36. I believe the chancellor erred when she found that James was able to rely on the natural-parent presumption and applied an erroneous legal standard when she awarded custody to Brittany. I would reverse and remand both custody awards as well as the grandparent-visitation award. However, I agree with the majority that Deanna lacks standing to appeal the chancellor’s rulings regarding James’s child-support obligations and Hayden’s birÜi certificate. ' Therefore, I concur in part and dissent in part.
I. James
¶ 37. The only question for this Court to decide — -with.. respect to James — is *447 whether the chancellor erred when she found that James could rely on the natural-parent presumption.
¶ 38. As stated in the majority opinion, the natural-parent presumption may be rebutted if the third party proves by clear and • convincing evidence that the parent abandoned or'deserted the child.[12]' “Desertion” has been defined by the Mississippi Supreme Court as “forsaking a person to whom one is legally obligated or-forsaking one’s duty.” Hamilton v. Houston, 100 So.3d 1005, 1010 (¶ 17) (Miss.Ct.App.2012) (citation and quotations omitted). “Desertion differs from abandonment in that abandonment has to do with the relinquishment of a right or claim, whereas desertion involves an avoidance of a duty or obligation.” Id. (citation and quotations omitted). Furthermore, the supreme court has held that a parent’s long and continuous absences, failure to exercise parental rights, and failure to fulfill parental responsibilities, which caused the child’s grandparents to step in as primary caretakers, were “actions consistent with desertion.” Id. (quoting Smith, 97 So.3d at 48 (¶ 16)).
¶ 39. • Hayden was born in August 2007, and there is scant evidence that James was involved in Hayden’s life prior to April 2012 when Brittany and James started living together. This may be attributed, in part, to the fact that James was incarcerated from April 2008 to April 2009 and April 2011 to April 2012.
¶ 40. The majority states that “there is ample evidence that James regularly spent time with Hayden .,. [from] April -2012 through the July 2014- hearing[.]” However, Deanna testified that James saw Hayden when it was “convenient for [him] and that’s how it’s always been.” And she also said that Hayden often ended up with his paternal great-grandparents when James had scheduled visitation.[13]
¶ 41. Furthermore, James did not request visitation until he filed for custody— a decision that was- made approximately two weeks after DHS obtained an order requiring him to pay back child support. Deanna testified that James petitioned for custody only to avoid paying child support, which James denied. James also stated, with respect to providing financially: “Whoever’s with [Hayden] is whoever buys it for him that day.”
¶ 42. In Hamilton, 100 So.3d 1005, this Court awarded custody of the child, Jaqua-vion, to his paternal grandparents after finding his parents’ long and continuous absences and forsaking of parental rights cónstituted desertion. Id. at 1010 (¶ 20). Around the age of six months, Jaquavion began living with his paternal grandparents full-time and only saw his mother sporadically. Id. at 1008 (¶ 4). Although his father’s listed residence was with Ja-quavion’s grandparents,' he acknowledged living with various girlfriends more often than at his parents’ house. Id. at 1010 (¶ 18). Furthermore, neither parent gave the financial support required to sustain Jaquavion. Id. at (¶ 19). The father would occasionally purchase clothing, school supplies, and food for him, but-his financial support or assistance for Jaqua-vion’s needs was, at best, sporadic. Id. *448 “Despite the fact that both parents were, at least nominally, involved in Jaquavion’s life, the trial clearly established the [grandparents] as Jaquavion’s primary caretakers and financial supporters.” Id. at 1008 (¶ 5).
¶43. Likewise, based on James’s long and continuous absences and the forsaking of his parental responsibilities, I believe that there is clear and convincing evidence that James’s natural-parent ■ presumption was rebutted. James has taken “ ‘an extended holiday from the responsibilities , of parenthood,’ and ... should not now be able to claim the benefit of his status as. a natural parent.” In re Dissolution of Marriage of Leverock & Hamby, 28 So.3d 424, 431-32 (¶25) (Miss.2009) (citation omitted). Therefore, I would reverse the chancellor’s finding and remand for a best-interest analysis under Albright.[14]
II. Brittany
¶44. Brittany voluntarily relinquished custody of Hayden and, therefore, could not rely on the natural-parent presumption. The only question for this Court, to decide — with respect to Brittany — is whether there was dear and convincing evidence that the chancellor’s award of custody to Brittany was in Hayden’s best interests.
¶ 45. “[A] natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, .... may reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the- child.” Grant v. Martin, 757 So.2d 264, 266 (¶ 10) (Miss.2000).
The factors used to determine what is in the “best interest” of a child with regard to custody are: (1) the age, health, and sex of the child; (2) determination of the parent who had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parents and the responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.[15]
¶ 46. As the majority stated, “Although the chancellor conducted an Albright analysis, the chancellor did not apply Grant’s clear-and-convincing-evidence standard.” Therefore, I would reverse and remand. See Dorman v. Dorman, 737 So.2d 426, 431 (¶ 11) (Miss.Ct.App.1999) (“While we do not require so-called ‘magic words,’ we do require enough words indicative of the basis for the chancellor’s decision.”).
Conclusion
¶47. The chancellor erred in finding James eould rely on the natural-parent presumption and applied an erroneous legal standard in awarding custody to Brittany. Therefore, I would reverse and remand both custody awards as well as the grandparent-visitation award. In the event James and/or Brittany were granted custody on remand, I would encourage the chancellor to consider the grandparent-vis *449 itation statute as well as the Marim[16] factors and enter a judgment accordingly. I agree with the majority that Deanna lacks standing to appeal the chancellor’s rulings regarding James’s child-support obligations and Hayden’s birth certificate.
BARNES, J., JOINS THIS OPINION. JAMES, J., JOINS THIS OPINION IN PART.

. Although the chancellor did not use the word "desertion,” I believe her factual findings indicate that she considered desertion as a means of rebutting the natural-parent presumption, See Smith v. Smith, 97 So.3d 43, 49 (¶ 17) (Miss.2012). The chancellor stated: "[James] did not give up his parental presumption by signing off [on] an order, and I don’t think [he] gave up his parental presumption in any other manner, by abandoning the child or not being involved [in] the child’s life.”

. Deanna also referred to Brittany.

. Albright v. Albright, 437 So.2d 1003 (Miss.1983).

. To be clear, "custodian(s)” should be substituted in place of "parent(s)'' when applying the Albright factors to the facts of this particular case.

. Martin v. Coop, 693 So.2d 912 (Miss.1997).