519 So.2d 1232 (1988)
Carolyn Moody PARKER
v.
James Charles PARKER.
No. 57443.
Supreme Court of Mississippi.
February 17, 1988.
*1233 Laurel G. Weir, Thomas L. Booker, Weir & Booker, Philadelphia, for appellant.
J. Niles McNeel, Richard P. Ballard, McNeel & Ballard, Louisville, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ZUCCARO, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Carolyn Moody Parker appeals from a judgment of the Chancery Court of Winston County denying her a divorce from the bonds of matrimony against James Charles Parker and dismissing her bill of complaint. She assigns the following error in the trial below:
THE DECISION OF THE LOWER COURT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE LAW AND EVIDENCE AND NOT SUPPORTED BY ANY LAW OR EVIDENCE AND THE COURT ERRED IN DENYING APPELLANT A DIVORCE AND/OR RELIEF BECAUSE OF ALLEGED RECRIMINATION OF APPELLANT.
The parties were married June 24, 1966, and they lived in Winston County until their separation occurred in February, 1984. No children were born of the marriage. Appellant operated a beauty shop, and appellee operated a garage, both located on three acres of land upon which the parties lived.
Appellee rested without putting on any evidence or testifying himself. In fact, he did not even appear at the trial, and when the appellant rested her case, appellee's attorney rested. Appellant called a number of witnesses who testified about various incidents, generally and specifically, to establish her ground for divorce of habitual cruel and inhuman treatment. Specifically, the record reflects the following conduct of appellee toward appellant:
(1) Charles entered Carolyn's beauty shop while she was cutting the hair of a male customer and asked, "What are you doing?"
*1234 (2) Charles watched the beauty shop with binoculars while Carolyn was cutting the hair of a male customer.
(3) Carolyn arrived home one night to discover Charles and a woman exiting his garage.
(4) Charles was seen hugging and kissing another woman at a Willie Nelson concert.
(5) Charles had an altercation with a man who congratulated Carolyn for having won a tape player at a car race.
(6) On several occasions, Charles threatened to kill himself.
(7) Charles was unfriendly toward Carolyn's relatives.
(8) Charles offered $100.00 to his friend's wife in return for sexual favors.
(9) Charles falsely accused Carolyn of "going with" the church song leader and having sex with other men.
(10) Charles would check the mileage on Carolyn's car to determine if she had been anywhere while he was gone.
(11) While working under a car, Charles had a vision in which the Lord told him that if Carolyn went out on a certain weekend, her face "would not be fit to be seen anymore on the earth ..."
(12) When Charles saw Carolyn dancing with another man at a birthday party, he shoved her into their car, bruising her leg in the process, and called her a "sorry, low-down slut." Then, while Carolyn waited in the car, Charles went out into the woods and fired a pistol.
(13) Charles fired a pistol outside Carolyn's beauty shop.
(14) The day Carolyn was admitted to the hospital, Charles entered Carolyn's beauty shop, furious and shouting, and demanded her car keys.
(15) On two occasions in 1983, Carolyn and Charles hired attorneys to prepare pleadings for an irreconcilable differences divorce, but no suit was ever filed.
(16) Some of Carolyn's beauty shop customers quit doing business with Carolyn because of her difficulties with Charles. The beauty shop has since gone out of business.
Appellant's physician testified that, at the time of the separation, appellant required hospitalization for "severe anxiety" caused by "family problems" which left her "almost hysterical." She remained hospitalized for four days.
Appellant pled the affirmative defense of recrimination, e.g., that appellant had committed adultery. At the conclusion of the trial, the chancellor remarked that an important issue in the case was the doctrine of recrimination, an equitable doctrine, which says that in divorce cases, if both parties are at fault to an equal degree, a divorce can be denied in view of the doctrine of recrimination and the clean hands doctrine, the court was of the opinion that the complaint for divorce should be dismissed. In the decree of dismissal, it was provided:
The Court finds by clear and convincing evidence that the Plaintiff has been guilty of adultery and that the defense of recrimination does prohibit and preclude the granting of a divorce in this case. It is therefore the Order of this Court that the Bill of Complaint should be and is denied with prejudice and the Bill of Complaint for divorce is dismissed.

LAW
In order for a divorce to be granted on the ground of habitual cruel and inhuman treatment, there must be proof of systematic and continuous behavior on the part of the offending spouse which goes beyond mere incompatibility. Day v. Day, 501 So.2d 353 (Miss. 1987). The conduct of the offending spouse must be such as to render cohabitation with the non-offending spouse possible only at the risk of life, limb, or health of that party. Kergosien v. Kergosien, 471 So.2d 1206 (Miss. 1985); Marble v. Marble, 457 So.2d 1342 (Miss. 1984). Further, the separation must be causally related to the habitual cruel and inhuman treatment. Fournet v. Fournet, 481 So.2d 326 (Miss. 1985); Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984). In the latter two cases, there was no causal *1235 relation whatsoever, and the cases were reversed.
In Chaffin v. Chaffin, 437 So.2d 384 (Miss. 1983), a divorce on the ground of cruel and inhuman treatment was upheld where the wife's continual nagging and absence from the home, coupled with her threat to kill her husband, resulted in "physical and psychological distress" to the husband, which was causally related to the separation. 437 So.2d at 386. More recently, in Ethridge v. Ethridge, 483 So.2d 370 (Miss. 1986), the husband's "sordid" treatment of his wife, including episodes of physical abuse, resulted in "an impairment and menace to her health and physical well being," which was held sufficient to support a divorce on grounds of habitual cruel and inhuman treatment. 483 So.2d at 371.
A sensitive spouse or a spouse from a society and environment of breeding, education or culture, may be physically, mentally and emotionally affected and injured by slightly cruel and less severe treatment, while another spouse, who is hardened and calloused to physical abuse and treatment, might be unaffected by the same treatment which would injure the sensitive person. In the case sub judice, the testimony of the witnesses is undisputed as to the conduct of the appellee, which the physician testified was injurious to appellant's health to the extent that she required medical attention and hospitalization.
We think the evidence fully supported a divorce for appellant on the ground of habitual cruel and inhuman treatment.

RECRIMINATION
In his bench ruling, the chancellor said: I think in a case involving adultery, the court feels constrained to invoke that doctrine [recrimination] because that is one of the most serious marital problems, as far as the Court is concerned....
As stated, the decree provided, "... the defense of recrimination does prohibit and preclude the granting of a divorce in this case."
Mississippi Code Annotated § 93-5-3 (1972) provides:
If a complainant or cross-complainant in a divorce action shall prove grounds entitling him to a divorce, it shall not be mandatory on any chancellor to deny such party a divorce, even though the evidence might establish recrimination on the part of such complainant or cross-complainant.
The doctrine of recrimination is founded on the basis that the equal guilt of a complainant bars his/her right to divorce, and the principal consideration is that the complainant must come into court with clean hands. Oberlin v. Oberlin, 201 Miss. 228, 29 So.2d 82 (1947); Joy v. Miles, 190 Miss. 255, 199 So. 771 (1941); Dunn v. Dunn, 156 Miss. 132, 125 So. 562 (1930). The complainant's offense need not be the same offense charged against his spouse, but it must be an offense sufficient to constitute a ground for divorce. Oberlin, supra.[1]
An Examination of the Recrimination Doctrine, 20 S.C.L.Rev. 685 (1968), by Marvin M. Moore, gives a thorough treatment of the subject. Professor Moore states reasons for the defense of recrimination, which follow:
Supporters of recrimination have not based their case solely on arguments of a legalistic nature. At least four policy-oriented justifications of the doctrine may be found in judicial opinions: (a) By rendering divorces more difficult to procure, recrimination promotes marital stability. (b) The rule tends to deter immorality, since a spouse is less likely to commit adultery (or any other marital offense) if he knows that his misdeed may bar him from obtaining a divorce at some future time. (c) The doctrine serves to protect the wife's economic status. (d) Recrimination prevents persons who are obviously poor marriage risks from being *1236 freed to contract  and probably ruin  another marriage.
Id. at 714-715.
These reasons for recrimination offered are impractical and fail with the mores of present times, particularly insofar as they affect the case sub judice. For instance:
(a) There is no marital stability in the present case, and the marriage has deteriorated to the point where there is no marriage.
(b) The record here reflects that the appellant wife did not commit adultery during the time the parties lived together and cohabited as husband and wife, but only after the separation and dissolution of the marriage relationship.
(c) The economic status of the appellant wife here is not protected, but, on the other hand, for practical purposes has been destroyed. The undisputed evidence indicates that appellant wife's beauty shop is located on the three-acre marital homestead, which appellee now occupies; that the shop is fully equipped and is owned by appellant; that appellant's troubles with appellee have adversely affected her business; that appellant is fearful of appellee and has not attempted to reopen the shop since the separation; and that appellant is unable to support herself by working locally in someone else's beauty shop. It is apparent that the public interest in promoting appellant's financial security would be served, not by denying appellant a divorce, but by granting one along with a property settlement sufficient to permit her to resume the operation of her own business.
(d) The State's interest in preventing bad marriages is acknowledged, and it is possible that denial of a divorce in this case will prevent subsequent bad marriages involving these parties. However, it is practically certain that denial of divorce in the present case under these facts would perpetuate an already-existing bad marriage.
While this Court is not suggesting condonation of the conduct of the appellant wife after the separation of the parties, when we balance out the uncontradicted evidence that the conduct of the appellee was responsible for the separation of the parties and the dissolution of their marriage; that the misconduct of the appellant wife occurred after the destruction of the marriage; and that the legislature has, in the least, greatly weakened the defense of recrimination; we are of the opinion that the learned chancellor erred in denying a divorce to appellant on the ground of habitual cruel and inhuman treatment and in dismissing the bill of complaint. Therefore, the judgment of the lower court is reversed, and judgment is entered here granting a divorce to appellant on the ground of habitual cruel and inhuman treatment. The cause is remanded to the lower court for a determination of the property rights between the parties and for a division of same, and to determine and resolve matters of alimony and support, if they may exist.
REVERSED AND RENDERED AND REMANDED TO THE LOWER COURT FOR FURTHER PROCEEDINGS.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, concur.
NOTES
[1] See discussions on recrimination in 27A C.J.S. Divorce § 88 (1986); Moore, An Examination of Recrimination Doctrine, 20 S.C.L.Rev. 685 (1968); Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 4.03, pp. 148-50, fn. 51 (1957); Note 38 Miss.L.J. 17 (1966); Note 37 Miss.L.J. 322 (1966).