741 So.2d 998 (1999)
John Franklin PUCYLOWSKI, J.F.P. & Co., Inc. and HR Development, Inc., Appellants,
v.
Judith Polk PUCYLOWSKI, Appellee.
No. 98-CA-00089-COA.
Court of Appeals of Mississippi.
June 22, 1999.
Fred W. Johnson, Jr., Jackson, Attorney for Appellant.
B. Ruth Johnson, Jackson, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND PAYNE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case comes before the Court as an appeal by John Pucylowski from a decision of the Chancery Court of Hinds County dissolving his marriage to Judith Pucylowski, making an equitable division of certain marital assets and awarding Mrs. Pucylowski lump sum alimony. Mr. Pucylowski complains that the chancellor *999 erred in denying his own claim for divorce arising out of the cruel and inhuman manner in which Mrs. Pucylowski had treated him during the marriage. He also urges that the chancellor erred in making an equitable division of marital assets and lump sum alimony award without first making those determinations of value of the assets that would necessarily precede awards of that nature. We determine that Mr. Pucylowski's first issue is without merit. However, finding merit in his second issue, we reverse and remand for further proceedings.

I.

Facts
¶ 2. These parties began their marriage in 1968 when they were both under twenty-one years of age. There is no indication that either brought any resources to the marriage beyond an apparent inclination toward hard work shared by both of them. Though they both began their careers as employees in the public sector, an early profitable side venture into building and selling what is known in the industry as a "spec house" led the couple into the field of land development and residential property construction. This field of endeavor proved fruitful for the couple and they prospered financially, enjoying a good income and many of the luxuries of life including a nice home, nice vehicles, and extensive travel. Despite their lifestyle, however, their financial efforts were successful to the extent that they were able to accumulate substantial investment assets that consisted primarily of interests in land development projects owned solely in Mr. Pucylowski's name.
¶ 3. Their personal relations, however, did not prosper to the same degree as their financial efforts and, in the mid-1990's their marriage began to deteriorate. Mr. Pucylowski finally left the marital domicile in April 1996, moving to an apartment that he had rented a month prior to his departure. Subsequent investigation revealed that Mr. Pucylowski had become romantically involved with Laura Prince, who had been recently widowed. Mr. and Mrs. Prince had also been in the residential construction business and had become friends to the Pucylowskis, and Mr. Pucylowski had been spending time with Mrs. Prince helping her maintain her business after the untimely death of her husband in an automobile accident. Private investigators retained by Mrs. Pucylowski after the separation observed Mrs. Prince frequenting Mr. Pucylowski's apartment and it was determined that she had her own key to the premises. Both Mr. Pucylowski and Mrs. Prince admitted that they had begun an adulterous relationship but they insisted that it had not begun until after Mr. Pucylowski had moved out of the home.
¶ 4. By way of his counterclaim, Mr. Pucylowski presented evidence that his wife was given to fits of rage against him where she would berate him in public and threaten to kill him or emasculate him. He also presented letters where Mrs. Pucylowski ridiculed his religious beliefs and accused him of belonging to a religious cult. He claimed that she constantly threatened to leave him and that she had opened a separate bank account which she mockingly called her "Leaving Frank Account." Mr. Pucylowski testified that her behavior made it difficult for him to sleep.
¶ 5. Prior to the separation, the couple had worked together in the home construction business, using the corporate form of operation. The corporation was known as J.F.P. After the separation, Mr. Pucylowski ceased any efforts in that corporation and, instead, began working in a residential construction business known as Team Builders, which was formed after the separation and was owned solely by Mr. Pucylowski's elderly mother. Several other key employees of J.F.P. also went to work for Team Builders. Though Mr. Pucylowski acts as president of the corporation, he testified that his sole remuneration from the corporation consisted of a salary of $1,500 per month. Mrs. Pucylowski had *1000 not found other suitable employment at the time of trial. She had worked at several positions through a temporary employment agency, but had depleted a substantial amount of existing assets to meet her living expenses after the separation.
¶ 6. The principal assets of the parties consisted of J.F.P., the largely moribund corporation formerly operated by the couple; the marital domicile; Mrs. Pucylowski's jewelry; various vehicles; retirement accounts; and various corporate interests held solely by Mr. Pucylowski involved in real estate development projects and related business enterprises. The chancellor awarded Mrs. Pucylowski the marital dwelling, a Ford Explorer vehicle, a Lincoln automobile, her jewelry and furs, and the household goods in her possession by virtue of her occupancy of the dwelling, a tractor and bush hog to use in maintaining the marital dwelling, and cash of $60,000. She allowed Mrs. Pucylowski to retain her individual retirement account, awarded her one half of Mr. Pucylowski's holdings in one of the real estate development corporations, and ordered Mr. Pucylowski to pay $250,000 in lump sum alimony over a period of five to seven years.
¶ 7. In making that award, the chancellor concluded that the total package given to Mrs. Pucylowski amounted in value to approximately one half of the marital assets.

II.

The First Issue: Grounds for Divorce
¶ 8. We will resolve this issue first since, depending on its resolution, it has the potential to render the issues of the property division and alimony moot. Mr. Pucylowski actually raises two separate issues regarding the propriety of granting a divorce. First, he urges that the chancellor erred in awarding his former wife a divorce on the ground of uncondoned adultery because the adulterous relationship only began after the couple had separated and was, thus, not the cause of the marriage breakdown. He further argues that the overwhelming weight of the evidence suggests that the true cause of the marital breakup was Mrs. Pucylowski's prolonged cruel and inhuman treatment of him. Citing Parker v. Parker as authority, Mr. Pucylowski urges this Court to reverse the chancellor's decision granting a divorce to his wife on adultery and, instead, grant him a divorce on the ground of cruel and inhuman treatment. Parker v. Parker, 519 So.2d 1232 (Miss.1988). Parker v. Parker does not stand for the proposition that the adulterous relationship must be the cause of the marriage breakup in order to entitle the other spouse to a divorce. Rather, the decision dealt with the defense of recrimination asserted by the defendant husband to the charge of habitual cruel and inhuman treatment asserted by his wife. Id. at 1234. The chancellor, finding that the wife had, indeed, engaged in adulterous activity, denied her claim to a divorce on the ground of recrimination although, apparently, he was satisfied that a case for habitual cruel and inhuman treatment had been made. Id. The Mississippi Supreme Court, in reversing that decision, held only that the adulterous relationship had arisen after the marriage had essentially been destroyed by the husband's protracted misconduct and determined that it was inequitable under those facts to sustain a recrimination defense. Id. at 1236.
¶ 9. In this case, unlike Parker, the chancellor concluded that a case for habitual cruel and inhuman treatment had not been made out. Thus, recrimination is not an issue in this case. Rather, the only real issue is a determination as to whether the chancellor abused her discretion in so finding. The chancellor concluded that Mrs. Pucylowski's actions "may have made her less desirable to Frank, but in the aggregate, do not satisfy the exacting standards" for a divorce on the ground of habitual cruel and inhuman treatment. She cited the case of Bland v. Bland, which says that the offensive behavior *1001 must endanger "life, limb, or health, or [create] reasonable apprehension of danger, or unnatural and infamous conduct making the marital relation revolting." Bland v. Bland, 620 So.2d 543, 544 (Miss. 1993). In determining whether the proof rose to the necessary level to obtain a divorce, the chancellor has substantial discretion. Hassett v. Hassett, 690 So.2d 1140, 1146 (Miss.1997). On appeal, we may interfere only if we determine that the chancellor has manifestly abused the wide discretion afforded her in such matters. Id. Mr. Pucylowski's primary complaint regarding Mrs. Pucylowski's behavior was that it interfered with his ability to sleep. Having reviewed the evidence, we are unconvinced that the chancellor was manifestly wrong when she determined that Mrs. Pucylowski's conduct, though certainly offensive in many of its aspects, did not constitute a real danger to Mr. Pucylowski's physical or mental well-being such that it would entitle him to a divorce.
¶ 10. Having decided that the claim by Mr. Pucylowski that his adulterous activities were confined to the post-separation phase of his marriage is of no consequence, we conclude that the chancellor did not err in granting a divorce to Mrs. Pucylowski on the ground of her husband's adulterous behavior.

III.

The Second Issue: The Property Settlement and Award of Lump Sum Alimony
¶ 11. As we have already noted, the parties accumulated significant assets during the course of their marriage. Under now well-established holdings by the Mississippi Supreme Court, it matters little that a significant portion of those assets were titled solely in Mr. Pucylowski's name, since the chancellor has substantial authority to look beyond mere legal title to make an equitable division of property acquired during the course of the marriage by the joint efforts of the parties or by the individual effort of either one of them. Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994). Of course, a chancellor is not confined to a division of marital assets in arriving at an equitable resolution of the financial aspects of a dissolving marriage. She may also consider more traditional means of addressing the issues such as awards of periodic alimony or lump sum alimony, or she may undertake to fashion a judgment that involves some mixture of all three. Id. at 929. The chancellor in this case used a combination of equitable division of existing assets combined with a substantial award of lump sum alimony to be paid, with interest, by Mr. Pucylowski to his former wife "over a five to seven year period." The chancellor, in her opinion, indicated that it was her intention, by this combined award, to set the value of Mrs. Pucylowski's package "at approximately one half of the marital assets."
¶ 12. While we do not find particular error in the chancellor's attempt to set apart to Mrs. Pucylowski roughly one-half of the marital assets based on the proof that she had contributed substantially through years of hard work to the accumulation of these assets, we are of the opinion that the chancellor erred by failing to make the necessary findings of fact as to valuation of the various assets that would permit this Court to make a meaningful inquiry into whether the chancellor did, in fact, accomplish her objective.
¶ 13. Ferguson v. Ferguson says that "[p]roperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division." Id. at 929. In this case, the only effort by the chancellor at making findings of fact as to the value of marital assets was to find that Mrs. Pucylowski's evidence indicated a value of $1,300,000 while Mr. Pucylowski's proof showed a value of $990,000. Unfortunately, the chancellor did not attempt to resolve this rather wide variation in value of some $310,000. Her statement that the total value of the marital property *1002 set apart to Mrs. Pucylowski was $350,000 and that this figure, combined with a lump sum alimony award of $250,000, would equal one-half the value of the marital property suggests that the chancellor may have been working with a figure of $1,200,000 for marital assets. However, even assuming that to be true, there is no explanation as to what evidence was accepted and what was rejected as less trustworthy to arrive at this figure.
¶ 14. There is the added problem that, after attempting to fashion an award that would ultimately benefit Mrs. Pucylowski in a sum equal to one-half the existing marital assets, the chancellor, without additional explanation, proceeded to make an additional division of Mr. Pucylowski's interest in one of the real estate development corporations.
¶ 15. The evidence relating to the fair value of the various holdings of this couple acquired during the marriage was rather substantial, although perhaps not always particularly enlightening. It is the opinion of this Court that, absent more precise findings of fact relating to value as to the various components of this couple's accumulated wealth, we are unable to make a rational inquiry into whether the chancellor abused her discretion in the relief fashioned in this case.
¶ 16. We, therefore, conclude that we must reverse and remand for further proceedings in which the chancellor would, based on the evidence presently in the record, or on such further evidence as to valuation as she might in the exercise of her discretion require the parties to submit, make appropriate detailed findings of fact as to the fair market value of each of the various assets and business holdings of this couple. After such findings are made on the record, the chancellor would then be prepared to fashion appropriate relief that would have some meaningful foundation in fact based upon those determinations of value.
¶ 17. Only with such findings can this Court, in the event of a subsequent appeal, make an informed inquiry into the appropriateness of the valuation assigned to the various assets and, from there, proceed to a meaningful consideration as to the overall fairness of the relief granted.
¶ 18. We do not dictate by this remand the necessity of additional proof on value. Rather, we leave that to the sound discretion of the chancellor. Neither do we suggest that, after the appropriate valuations have been made, the chancellor must necessarily alter the original award. We only conclude that, based on the lack of findings of fact as to value of the various assets, we are unable to conduct an appropriate appellate review to determine whether the present judgment was within the limits of the discretion afforded chancellors in such matters. In so holding, we note the clear announcement of the Ferguson Court that "[t]o aid appellate review, findings of fact by the chancellor, together with the legal conclusions drawn from those findings, are required." Id.
¶ 19. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THE TERMS OF THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED ONE HALF TO THE APPELLANT AND ONE HALF TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.