757 So.2d 305 (1999)
Courtney HARMON, Appellant,
v.
Lasharia HARMON, Appellee.
No. 1998-CA-01166-COA.
Court of Appeals of Mississippi.
November 16, 1999.
Rehearing Denied February 1, 2000.
Certiorari Denied May 4, 2000.
*307 Charles D. Easley Jr., Columbus, Attorney for Appellant.
G. Jyles Eaves, Louisville, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
DIAZ, J., for the Court:
¶ 1. Courtney Harmon appeals the judgment of the Clay County Chancery Court granting his wife, Lasharia Harmon, a divorce on the ground of adultery and awarding her custody of their daughter. Mr. Harmon contends that Ms. Harmon failed to establish by clear and convincing evidence that he committed adultery during their marriage. Moreover, he raises the defense of recrimination, citing Ms. Harmon's bigamous marriage and subsequent adultery. Mr. Harmon also claims that his wife condoned his adultery, as the couple resumed sexual relations following Ms. Harmon's discovery of the adulterous affair. Finally, Mr. Harmon challenges the chancellor's award of custody of their daughter to Ms. Harmon. Finding no error, we affirm.

FACTS
¶ 2. Courtney and Lasharia Harmon were married on September 10, 1994, in Clay County, Mississippi. Prior to their marriage, the couple had lived together with their daughter, Chikeyia, who was born November 1, 1987.
*308 ¶ 3. In March of 1995, Ms. Harmon discovered that her husband had been having an affair with Jackie Pittman when Ms. Pittman phoned the Harmons' home. After confronting her husband, who denied the affair, Ms. Harmon continued to live with him until February 1996. She filed for divorce shortly thereafter, alleging adultery and habitual cruel and inhuman treatment. Alternatively, Ms. Harmon sought an irreconcilable differences divorce. She further requested that she be granted custody of their daughter.
¶ 4. A temporary order was entered on April 12, 1996, awarding temporary custody of the parties' daughter to Ms. Harmon, as well as temporary use and possession of the marital home. Mr. Harmon was ordered to pay $140 per month as temporary child support.
¶ 5. Following a trial held in the Chancery Court of Clay County, the chancellor entered an order granting Ms. Harmon a divorce on the ground of adultery, finding that there was clear and convincing evidence that Mr. Harmon had engaged in an adulterous relationship during the parties' marriage. The chancellor rejected the defenses of recrimination and condonation raised by Mr. Harmon. Finally, custody of the couple's daughter was awarded to Ms. Harmon.

DISCUSSION

I. WHETHER THE CHANCELLOR ERRED IN GRANTING MS. HARMON A DIVORCE ON THE GROUND OF ADULTERY
¶ 6. Where the factual findings of the chancellor are supported by substantial credible evidence, they are insulated from disturbance on appellate review. Furthermore, in cases concerning an allegation of adultery, the chancellor is required to make a finding of fact. Where chancellors make such findings of fact, this Court has consistently held that their decisions will not be set aside on appeal unless they are manifestly wrong. Brooks v. Brooks, 652 So.2d 1113, 1117 (Miss.1995).
¶ 7. Mr. Harmon contends that the evidence was insufficient to support a finding that he was guilty of adultery. He claims that the testimony of his former lover, Jackie Pittman, was not credible and was motivated by revenge. Specifically, Mr. Harmon points to Ms. Pittman's admission that she had stated that she would "fix" him. Moreover, Ms. Pittman could not remember the specific dates and locations of their sexual encounters.
¶ 8. "In Mississippi one seeking a divorce on the grounds of adulterous activity must show by clear and convincing evidence both an adulterous inclination and a reasonable opportunity to satisfy that inclination." Holden v. Frasher-Holden, 680 So.2d 795, 798 (Miss.1996). Adultery may be shown by evidence or admissions and either are sufficient to support a decree of divorce. Id. at 799. Jackie Pittman testified that between 1992 and 1995, a sexual relationship existed between her and Mr. Harmon. Though Mr. Harmon disputed Ms. Pittman's testimony and claimed that the relationship ended prior to his marriage in 1994, the chancellor chose to believe Ms. Pittman. The weight and worth of witnesses' testimony is solely for the chancellor to determine. Doe v. Doe, 644 So.2d 1199, 1207 (Miss.1994). The chancellor did not err in finding that Mr. Harmon committed adultery during his marriage.

A. RECRIMINATION
¶ 9. At trial, Mr. Harmon asserted the defense of recrimination, claiming that Ms. Harmon is not entitled to a divorce due to her bigamous second marriage to Kerry Allen and her subsequent adultery. The chancellor found that "[a]lthough not pled as a defense or raised in a counterclaim, [Mr. Harmon] sought to defeat [Ms. Harmon's] claims for divorce by presenting proof of her recriminating acts. The Court finds that the adultery committed by [Ms. Harmon] occurred a year after the *309 parties had separated and will not bar her right to a divorce on the ground of adultery...." We agree.
¶ 10. The doctrine of recrimination is founded on the basis that the equal guilt of a complainant bars his/her right to divorce, and the principal consideration is that the complainant must come into court with clean hands. The complainant's offense need not be the same offense charged against his spouse, but it must be an offense sufficient to constitute a ground for divorce. Parker v. Parker, 519 So.2d 1232, 1235 (Miss.1988).
¶ 11. At trial, Ms. Harmon admitted that she had entered into a bigamous marriage and subsequently committed adultery, though she maintained that she and her purported "husband" only engaged in sexual relations on their wedding night. While we do not condone Ms. Harmon's actions in entering into a second marriage while still married to Mr. Harmon, we note that this conduct does not constitute a ground for divorce from Mr. Harmon. "Marriage to some other person at the time of the pretended marriage between the parties" is a ground for divorce in Mississippi. Miss.Code Ann. § 93-5-1 (Rev.1994). Ms. Harmon's bigamy would be a ground for divorce from Kerry Allen, not Mr. Harmon. However, through her adultery, Ms. Harmon did commit an offense sufficient to constitute a ground for divorce. Miss.Code Ann. § 93-5-1(Rev.1994).
¶ 12. Ms. Harmon's adultery does not prevent her from obtaining a divorce from Mr. Harmon. Miss.Code Ann. § 93-5-3 (Rev.1994) provides that "[i]f a complainant or cross-complainant in a divorce action shall prove grounds entitling him to a divorce, it shall not be mandatory on any chancellor to deny such party a divorce, even though the evidence might establish recrimination on the part of such complainant or cross-complainant." (emphasis added). Additionally, the supreme court has held that adultery committed by the complaining party following the couple's separation did not prevent her from obtaining a divorce. Parker, 519 So.2d at 1236. The court rejected the husband's defense of recrimination, reasoning that "the conduct of the appellee was responsible for the separation of the parties and the dissolution of their marriage; that the misconduct of the appellant wife occurred after the destruction of the marriage; and that the legislature has, in the least, greatly weakened the defense of recrimination...." Id.
¶ 13. Ms. Harmon testified that she did not meet Kerry Allen until after she and Mr. Harmon had separated. She stated that the "marriage was over" and that Allen did nothing to contribute to the breakup of her marriage. The chancellor did not err in refusing to deny Ms. Harmon a divorce due to her adultery.

B. CONDONATION
¶ 14. Condonation is forgiveness of a marital offense theretofore committed, on condition that it will not be repeated and that the offender will thereafter treat the forgiving party with conjugal kindness. Lee v. Lee, 232 So.2d 370, 373 (Miss.1970). The mere resumption of residence does not constitute a condonation of past marital sins and does not act as a bar to a divorce being granted. Cheatham v. Cheatham, 537 So.2d 435, 442 (Miss.1988). The condonation must be free and voluntary. If it is induced by fraud, fear or force, it is of no effect. Lee, 232 So.2d at 373.
¶ 15. Mr. Harmon claims that even if he were guilty of adultery, his wife condoned his behavior by resuming sexual relations with him after learning of his affair. However, Ms. Harmon testified that though she had sex with Mr. Harmon, it was not consensual. Mr. Harmon vehemently denies that his wife was anything other than a willing participant.
¶ 16. The chancellor found Ms. Harmon to be the more credible witness, holding *310 that "[w]hile both parties admit that they had sexual relations after February, 1995, the testimony of [Ms. Harmon] was credible that she was not a willing sexual partner with [Mr. Harmon]." The chancellor was within her authority to accept Ms. Harmon's testimony and to reject the contrary version of events offered by Mr. Harmon. Because Mr. Harmon's adultery thus stood uncondoned, it was within the chancellor's discretion to grant Ms. Harmon a divorce on the ground of adultery.

II. WHETHER THE CHANCELLOR ERRED IN AWARDING MS. HARMON CUSTODY OF THE COUPLE'S DAUGHTER
¶ 17. Mr. Harmon contends that the chancellor erred in awarding custody of the parties' daughter, Chikeyia, to Ms. Harmon. According to him, he is better suited to care for his daughter. He points to the fact that Ms. Harmon is unemployed and does not own a vehicle. Mr. Harmon also expresses concern over the effect Ms. Harmon's bigamous relationship with Kerry Allen may have on his daughter.
¶ 18. In child custody cases, the best interest of the child must be kept paramount. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994). In determining what that interest requires, several factors are considered. They are: (1) age, health and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of the home environment and employment of each parent and other factors relevant to the parent-child relationship. Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).
¶ 19. The chancellor addressed and analyzed each of the Albright factors before determining that it was in the best interest of Chikeyia to award custody of her to Ms. Harmon. The determinative factor in this case appears to be continuity of care, as none of the other factors favored one party over the other. The chancellor relied primarily upon the fact that "[t]he proof showed that the child was with the mother almost seven years before the marriage. During most of the child's life, the mother had the primary responsibility for caring for the child."
¶ 20. The chancellor acknowledged that Ms. Harmon is currently unemployed but noted that she has worked in the past and during the marriage. Further, though Mr. Harmon claims that his wife is unemployed, she testified that she is in fact employed by Bryan Foods but was not working at the time of trial due to injuries she sustained in an automobile accident.
¶ 21. As for the effect Ms. Harmon's bigamous marriage may have on her daughter, the chancellor found that "[t]here was no proof that Lasharia's relationship with Mr. Allen had any adverse effect on the child." Ms. Harmon testified that Kerry Allen moved in with her in order to protect her from Mr. Harmon. Although the testimony was unclear as to Mr. Allen's living arrangements, Ms. Harmon stated that he had a home in Jackson but visited her often. She then testified that Mr. Allen "has not totally moved out." Later, her attorney offered to stipulate that Mr. Allen does in fact live with Ms. Harmon. Regardless, the chancellor did not err in finding that the relationship did not weigh heavily against Ms. Harmon in making the custody determination.
¶ 22. Ms. Harmon further explained that when Mr. Allen stays at her home, he sleeps in one bedroom while she sleeps with her daughter in another, a fact confirmed by Chikeyia. Additionally, Ms. Harmon stated that she had taken measures *311 to have the void marriage annulled. She testified that she and Mr. Allen do not hold themselves out as a married couple. Finally, Mr. Allen testified that after Ms. Harmon obtains a divorce, he plans to marry her, though not immediately.
¶ 23. The standard of review in a child custody case is well-settled. "The review is `quite limited in that the chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this court to reverse.'... This Court will not disturb the findings of a chancellor, be they of ultimate fact or of evidentiary fact, when supported by substantial evidence in the record." Weigand v. Houghton, 730 So.2d 581, 585 (Miss.1999) (citations omitted). The chancellor's decision to award custody of Chikeyia to Ms. Harmon is supported by substantial evidence.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF CLAY COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.