919 So.2d 135 (2005)
Sunny S. BREWER, Appellant,
v.
Ritchie W. BREWER, Appellee.
No. 2004-CA-00040-COA.
Court of Appeals of Mississippi.
May 31, 2005.
*138 Robert R. Marshall, attorney for appellant.
David Lee Brewer, Christopher Hederi Neyland, Thomas Michael Reed, attorneys for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Sunny S. Brewer appeals the chancellor's judgment awarding Ritchie W. Brewer a divorce based on uncondoned adultery and giving him primary physical custody of their minor child. We find no error and affirm.

FACTS
¶ 2. Ritchie and Sunny Brewer were married on June 21, 1997. One child was born to their marriage, who, at the time of the trial in this matter, was approximately four years old.
¶ 3. On January 15, 2003, Ritchie filed for divorce based on uncondoned adultery and habitual cruel and inhuman treatment. Ritchie sought custody of the minor child. Sunny filed her answer and counter-complaint for divorce on January 28, 2003, seeking a divorce on the grounds of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Sunny also sought custody of the minor child.
¶ 4. A temporary order was entered, on April 15, 2003, in which physical and legal custody of the minor child was to be shared by the parties on alternating week-ends. A trial in this matter was held on September 10, 2003.
¶ 5. On October 3, 2003, the chancellor issued his memorandum opinion granting Ritchie a divorce from Sunny based on uncondoned adultery. Ritchie and Sunny were awarded joint legal custody of the minor child, with Ritchie having primary physical custody. A final judgment of divorce was subsequently entered. Sunny filed a post-trial motion, which was denied by the chancery court.
¶ 6. Sunny appeals and argues that: (1) the chancellor erred in granting a divorce based on uncondoned adultery since he applied an incorrect legal standard, and (2) the chancellor erred in awarding Ritchie primary physical custody of the minor child.

ANALYSIS

I. Did the chancellor err in granting the divorce based on uncondoned adultery?
¶ 7. Sunny argues that the chancellor erred in granting the divorce based on uncondoned adultery. She contends the chancellor applied the wrong legal standard used to prove adultery.
¶ 8. A charge of adultery may be grounds for a divorce upon a showing of either an infatuation for a particular person of the opposite sex or a generally adulterous nature on the part of the defendant. McAdory v. McAdory, 608 So.2d 695, 700 (Miss.1992) (citing Owen v. Gerity, 422 So.2d 284, 287 (Miss.1982)). Proof of either of these elements must be supported by evidence of a reasonable opportunity to satisfy the infatuation or proclivity. Id. Adultery as a ground for divorce must be proved by clear and convincing evidence. Brooks v. Brooks, 652 So.2d 1113, 1116 (Miss.1995).
*139 ¶ 9. In his memorandum opinion, the chancellor stated that "adultery [was] shown by a preponderance of the evidence to be the cause of the marriage failing." Thus, Sunny is correct in her contention that the chancellor applied the wrong legal standard. However, upon review of the record, it is apparent that clear and convincing evidence established that Sunny committed uncondoned adultery.
¶ 10. Sunny admitted to having an extramarital sexual relationship with Dr. Isidro Amigo, beginning in October 2002, while working on assignment in Marietta, Ohio. Sunny argues that this affair was condoned by Ritchie since she and Ritchie had sexual intercourse three times after Ritchie learned of her affair with Dr. Amigo.
¶ 11. Condonation is the forgiveness of a marital offense. Wood v. Wood, 495 So.2d 503, 505 (Miss.1986). Condonation is conditioned on the offending spouse's continued good behavior. Id. If the injurious acts are renewed or repeated, the right to make the condoned offense a ground for divorce is revived. See Lindsey v. Lindsey, 818 So.2d 1191, 1195(¶ 18) (Miss.2002); Manning v. Manning, 160 Miss. 318, 318, 133 So. 673 (1931).
¶ 12. Sunny acknowledged that Ritchie never forgave her for her adulterous affair with Dr. Amigo. She further testified that after separating from Ritchie she resumed her relationship with Dr. Amigo while in Scottsdale, Arizona. Moreover, in addition to her adulterous relationship with Dr. Amigo, Sunny testified that she had two other adulterous relationships with two different men after her separation from Ritchie.
¶ 13. Once properly married by law, the parties remain married until the entry of an order of final divorce. See McIlwain v. McIlwain, 815 So.2d 476, 479(¶ 7) (Miss.Ct.App.2002). So long as there exists and remains a valid marital relationship, proof of adulterous conduct on the part of one of the spouses to the marriage, prior to the official entry of a divorce order, whether before or after separation, may result in a final order of divorce being granted to the innocent spouse because of the adulterous actions of the other spouse. See Pucylowski v. Pucylowski, 741 So.2d 998, 1001(¶ 10) (Miss. Ct.App.1999)
¶ 14. The chancellor is the primary judge of the weight and value of the testimony and his judgment will not be disturbed unless manifestly wrong. Dubois v. Dubois, 275 So.2d 100, 101 (Miss. 1973). This Court "will affirm the decree if the record shows any ground upon which the decision may be justified." Yates v. Yates, 284 So.2d 46, 47 (Miss.1973). Where the defendant admits to adulterous conduct and this testimony is corroborated with other circumstantial evidence, a divorce on the grounds of adultery will be affirmed. See Arthur v. Arthur, 691 So.2d 997, 1001 (Miss.1997); Holden v. Frasher-Holden, 680 So.2d 795, 799 (Miss.1996).
¶ 15. Although the chancellor misstated the legal standard for adultery, we find that there was clear and convincing evidence that Sunny committed uncondoned adultery. Therefore, we affirm the chancellor's decision to grant a divorce on the ground of uncondoned adultery.

II. Did the chancellor err in awarding Ritchie primary physical custody of the minor child?
¶ 16. In all child custody cases, the polestar consideration is the best interest of the child. Sellers v. Sellers, 638 So.2d 481, 485(¶ 4) (Miss.1994). In making a child custody determination, it is well settled law that the trial court is to consider several factors which include: the *140 age of the children; the health and sex of the children; which parent had the continuity of care prior to the separation; which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parents and their responsibilities in that employment; the physical and mental health and age of the parents; emotional ties between parent and child; the moral fitness of the parents; the home, school and community record of the child; the preference of the child if of sufficient age; the stability of the home environment and employment of each parent; and any other relevant factors. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 17. We may not always agree with a chancellor's decision as to whether the best interests of a child have been met, especially when we must review that decision by reading volumes of documents rather than through personal interaction with the parties before us. Hensarling v. Hensarling, 824 So.2d 583, 586-87(¶ 8) (Miss.2002). However, in custody cases, we are bound by the limits of our standard of review and may reverse only when the decision of the trial court was manifestly wrong, clearly erroneous, or an erroneous legal standard was employed. Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997).
¶ 18. Sunny asserts that the chancellor failed to place on the record his findings as to each individual Albright factor. Although a chancellor must consider the Albright factors, he need not expressly enumerate them. Mitchell v. Mitchell, 820 So.2d 714, 722(¶ 47) (Miss. Ct.App.2000); Sobieske v. Preslar, 755 So.2d 410, 413(¶ 12) (Miss.2000). In his memorandum opinion, the chancellor correctly identified the Albright factors as the controlling authority in child custody cases. The chancellor found the following Albright factors to be neutral: age, health and sex of the child[1]; employment of the parent and the responsibilities of that employment; physical and mental health and age of the parents; the home, school and community record of the child; preference of the child; and stability of home environment and employment of each parent. The chancellor found no Albright factors to favor Sunny. The chancellor found the following Albright factors to favor Ritchie: continuity of care; best parenting skills; willingness and capacity to provide primary child care; emotional ties of parent and child; and moral fitness of parents.
¶ 19. Sunny contends that the chancellor abused his discretion and was manifestly wrong in his evaluation of the various Albright factors. Specifically, Sunny argues that Richie did not prove that he was financially able to provide for the minor child and thus the chancellor erred in finding that the "employment of each parent" factor was neutral. However, the record shows that Ritchie's Rule 8.05 form was made part of the court file. Ritchie testified as to his salary, and his testimony was identical to the Rule 8.05 form he submitted to the court. At no time during trial did Sunny challenge Ritchie's Rule 8.05 form or his testimony regarding his salary. Thus, Sunny is procedurally barred from raising the issue for the first time on appeal. See Crowe v. *141 Smith, 603 So.2d 301, 305 (Miss.1992); Ellison v. Meek, 820 So.2d 730, 736(¶ 22) (Miss.Ct.App.2002).
¶ 20. The chancellor's opinion considered each of the Albright factors, offered his analysis of the evidence relating to those factors, and then reached a conclusion as to which parent was favored under each factor. The end result was that Ritchie should receive primary physical custody of the minor child, with Sunny having reasonable visitation.
¶ 21. Determining custody of children is one of the most difficult decisions that courts must make. In Buchanan v. Buchanan, 587 So.2d 892, 898 (Miss.1991), the supreme court held that:
The law affords no mathematical formula for deciding such cases, and, even when the trial judge sensitively assesses the factors noted in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983) and progeny, the best the judiciary can offer is a good guess. We doubt it would be contrary to these children's best interests if [their parents] were to sit down and talk as the intelligent and mature adults they profess to be and resolve these matters without further civil warfare.
On the other hand, for one reason or another, we know and accept that there are times when people cannot agree, and the reason we have courts is to decide these cases.
¶ 22. We have reviewed the transcript and record. Clearly, the chancellor considered the decision on custody a close question. In making his decision, the chancellor relied on the testimony of Dr. John Patrick Galloway, an expert appointed by the court to evaluate the parties and the minor child. Dr. Galloway testified that Ritchie responded to the child's needs and activities more actively than Sunny. He stated that Ritchie was the "mainstay in the family" and provided the child with the most positive influence. Dr. Galloway further testified that the child had closer emotional ties with Ritchie than with Sunny and noted that the child stated that she wanted to live with her father. Dr. Galloway found that Ritchie was more adaptive to the needs of the child. He stated that Sunny was not molding her life to fit her child's but instead was attempting to make the child fit into her (Sunny's) life. Specifically, Dr. Galloway stated, "[Sunny's] more interested in other things at this particular time." Since he found Sunny's lifestyle to be less conducive for raising a four year old child, Dr. Galloway opined that Ritchie should be awarded primary physical custody of the minor child.
¶ 23. The chancellor sits as finder of fact in a child custody dispute. Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967). As such, the chancellor is vested with the responsibility to hear the evidence, assess the credibility of the witnesses, and determine ultimately what weight and worth to afford any particular aspect of the proof. Id. The chancellor's findings of fact so made are entitled to deference and it is not our role to substitute our judgment for his. Id. As an appellate court, we often admonish ourselves that we do not need to re-examine all of the evidence to see if it agrees with the chancellor's ruling; rather, our duty is merely to see if the chancellor's ruling is supported by substantial evidence. Lee v. Lee, 798 So.2d 1284, 1288(¶ 14) (Miss.2001). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." Bower v. Bower, 758 So.2d 405, 412(¶ 33) (Miss.2000).
*142 ¶ 24. Here, the chancellor's findings are supported by credible evidence in the record. While this Court may have given greater weight to different testimony, we cannot escape our responsibility to merely determine whether there is credible evidence to support the chancellor's decision. If there is, we must affirm it. Bower, 758 So.2d at 412(¶ 33).
¶ 25. The chancellor adequately stated the factual findings and legal conclusions that he relied on to find that the contested factors favored Ritchie. There was substantial evidence to support the chancellor's award of custody to Ritchie. Accordingly, we find no reversible error and affirm the award of primary physical custody of the parties' minor child to Ritchie.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ. concur.
NOTES
[1] The chancellor considered the tender years doctrine and stated that this doctrine would normally tend to favor Sunny. However, the chancellor awarded primary physical custody of the minor child to Ritchie despite the age of the child. In Albright, the supreme court acknowledged the weakening of the tender years doctrine in determining who is the proper parent to receive custody of the child. Albright, 437 So.2d at 1005. The age of the child is just one factor to be considered by a chancellor when making a determination of custody and should carry no greater weight than any other factor. Id.