LEE, P.J.,
Concurring in Part, Dissenting in Part.
¶ 29. With respect for the majority, I must dissent as to Issue II — whether the chancellor erred in granting a divorce based on habitual cruel and inhuman treatment. I concur as to the remaining issues. The majority finds that sufficient proof was presented by the testimony of Sally and Garrison to support a divorce on this ground. As I find that the testimony was insufficient to prove habitual cruel and inhuman treatment, I would reverse and render the chancellor’s decision to grant the divorce based on this ground.
¶ 30. For a divorce to be granted on the ground of habitual cruel and inhuman treatment, “[tjhere must be proof of systematic and continuous behavior on the part of' the offending spouse which goes beyond mere incompatibility.” Morris v. *741 Morris, 804 So.2d 1025, 1027(¶ 8) (Miss.2002) (quoting Parker v. Parker, 519 So.2d 1232, 1234 (Miss.1988)). In certain cases, “a single occurrence may be grounds for a divorce on this ground,” Boutwell v. Boutwell, 829 So.2d 1216, 1220(¶ 14) (Miss.2002), but this is not such a case as there was no allegation of a single act that was particularly offensive. It seems nearly impossible in this case to find “systematic and continuous behavior” when the marriage, not including the separation, lasted for less than two months, and the couple did not even live together during those two months. At the most, the couple only spent a few weekends together. Sally’s allegations against David were that he would come home late, pass out, or urinate on the bed or floor because he was intoxicated. She also testified that girls would call on the phone wanting him to meet them at bars. Sally’s testimony regarding these complaints was as follows:
Q. So in your complaint for divorce, you alleged that you were entitled to a divorce on the grounds of habitual cruel and inhumane [sic] treatment and/or habitual drunkenness. Can you tell [t]he Court what behavior that your husband — what conduct that occurred during the marriage that you are basing that allegation on?
A. The coming home late at night or coming home the next day intoxicated. Coming home, passing out, urinating on the bed or in the floor. Several girls calling him all of the time in my presence asking him to meet them at a bar. It was constant.
Q. How long did you and he live together?
A. We have not lived together any since the date we were married, never:
Q: Did you live together before you were married?
A. A year. About a year prior to our marriage, we had lived together.
THE COURT: Y’all didn’t separate after the date of the marriage?
MS. PACE: Well, when we got married, I still lived in Gautier and he was living in Orange Beach and we got married [at] the courthouse in Mobile. And that night, I came back home to Gautier and he still resided in Orange Beach. And we never lived together from that day of marriage.
(Emphasis added). Finally, she complained that David would not move her to Alabama after they got married. While these actions were unacceptable and certainly harmful to the marriage, I cannot find that these few allegations amount to habitual cruel and inhuman treatment.
¶ 31. I would further find that Sally failed to provide sufficient corroboration even if her testimony was sufficient to prove habitual cruel and inhuman treatment. The law is that once the spouse requesting a divorce on the basis of habitual cruel and inhuman treatment testifies as to the offending spouse’s behavior, then his or her testimony must be corroborated to provide a sufficient basis for relief. Heatherly v. Heatherly, 914 So.2d 754, 757(¶ 12) (Miss.Ct.App.2005).
¶ 32. Garrison, Sally’s witness, testified that she had known Sally since 2000 and thought of her as an adopted daughter. Garrison knew David but only though Sally. She did not have much contact with David. She testified that her observation of Sally and David’s marriage was “a lot of turmoil” and “a bad drinking problem” on behalf of David. However, she testified that she did not personally see David drinking during the couple’s marriage. According to Garrison’s personal observations of David between April and June 2002, David flirted with other women and acted like he was single. It was her belief that most people did not know he was married to Sally. She testified that Sally was very excited when she married David *742 and wanted to move to Alabama to be with him. However, David would make excuses and his plans to move her never materialized. She observed that Sally became very upset over David’s actions and saw her physician complaining of anxiety and depression. Garrison admitted that Sally had these feelings before she married David. Sally’s attorney attempted to call another witness, Gunter Bosarge, but the chancellor interrupted, saying, “I don’t need to hear from him. I think you’ve proved your case.” Regardless, even if all of Sally’s allegations are corroborated by the witness who was not allowed to testify, a divorce based on habitual cruel and inhuman treatment is still not warranted.
¶ 33. I agree with the chancellor that this couple should be granted a divorce. However, the supreme court has repeatedly held:
Divorce is a creature of statute; it is not a gift to be bestowed by the chancellor based upon a perception that declining to grant the divorce will not restore the couple to a harmonious relationship. It is a statutory act and the statutes must be strictly followed as they are in derogation of the common law.
Massingill v. Massingill, 594 So.2d 1173, 1178 (Miss.1992) (quoting Kergosien v. Kergosien, 471 So.2d 1206, 1210 (Miss.1985)). It is apparent that the chancellor made a hasty decision in granting this divorce, even to the point of cutting off one witness’s testimony before it started. While a divorce may have been warranted on a different ground, such as desertion, had it been properly pleaded, it was not warranted on the ground of habitual cruel and inhuman treatment.
IRVING, GRIFFIS AND ROBERTS, JJ., JOIN THIS SEPARATE OPINION.