# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00098-SCT

*ELIZABETH LINDSEY*

*v.*

*MARK LINDSEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/27/2000 |
| TRIAL JUDGE: | HON. NORMAN L. GILLESPIE |
| COURT FROM WHICH APPEALED: | TIPPAH COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | KENNETH EUGENE FLOYD, II |
| | TOMMY DEXTER CADLE |
| ATTORNEY FOR APPELLEE: | WILL R. FORD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 2/28/2002 |
| MOTION FOR REHEARING FILED: | 4/1/2002; denied 6/20/2002 |
| MANDATE ISSUED: | 6/27/2002 |

**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Mark Lindsey filed for divorce from Elizabeth Lindsey on grounds of adultery and irreconcilable differences on August 24, 2000, in the Chancery Court of Tippah County, Mississippi. An order was entered granting the divorce to Mark on the ground of adultery. On appeal, Elizabeth now brings the following issues before this Court:

> **I. Whether Mississippi law authorizes a final decree of divorce by a chancery court sitting in vacation and without the consent of both parties.**

> **II. Whether the chancellor erred in failing to give notice to Elizabeth of the hearing and rendering of the decree of divorce.**

> **III. Whether the chancellor erred in entering a final decree of divorce when at the time Elizabeth was pregnant.**

> **IV. Whether, in light of testimony revealing that Elizabeth and Mark resumed sexual relations, the chancellor erred in refusing to set aside the divorce decree based on the defense of condonation.**

## FACTS

¶2. The divorce was originally set for hearing on September 12, 2000; however, the hearing was continued until further order of the chancery court. On September 27, presiding Chancellor Norman L. Gillespie entered a final decree of divorce in favor of Mark on the ground of adultery. The matter was heard in vacation by the Chancery Court of Tippah County. Elizabeth failed to answer the complaint filed by Mark, and she did not appear before the chancery court when the chancellor heard Mark's complaint for divorce.

¶3. On October 27, 2000, Elizabeth, making her first appearance before the chancery court, filed a motion to set aside the decree of divorce. On December 4, 2000, a hearing was held on the motion to set aside the decree of divorce. The chancery court ruled in favor of Mark and refused to set aside the divorce decree. On December 12, 2000, Elizabeth filed a motion to reconsider, and on December 26, 2000, Elizabeth filed a motion to declare the final decree of divorce void. Both motions were denied.

## DISCUSSION

¶4. The scope of review in domestic matters is limited, and this Court will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied. *Norton v. Norton*, 742 So.2d 126, 129 (Miss. 1999).

### I. WHETHER THE CHANCELLOR ERRED IN ORDERING A DECREE OF DIVORCE IN VACATION AND WITHOUT THE CONSENT OF BOTH PARTIES.

¶5. Elizabeth relies on the rule in Mississippi that the power of judges and chancellors to sign decrees and try causes in vacation must be derived from statute or by consent of the parties. *Chaffin v. Chaffin*, 437 So.2d 384, 385 (Miss. 1983); *Callicott v. Horn*, 137 Miss. 693,102 So. 850, 851 (1925). A decree entered in vacation that is not in conformity with statute or not authorized by statute is void. *Id.* According to Elizabeth, Mississippi provides chancellors with the authority to hear and rule on divorce matters as follows:

> (1) The proceedings to obtain a divorce shall not be heard or considered nor a judgment of divorce entered except in open court. A chancellor may, in his discretion, hear or consider proceedings to obtain a divorce in vacation and make and enter judgments of divorce in the same manner as he may in other cases that may be heard in vacation pursuant to Section 9-5-91. Any judgment made or entered contrary to the provisions of this section shall be null and void.

Miss. Code Ann. § 93-5-17(1) (1994). Elizabeth argues that since Miss. Code Ann. § 9-5-91 (referenced above in § 93-5-17) was repealed in 1991, there is no longer a statute that authorizes a chancellor to hear divorce proceedings while in recess or in vacation from its scheduled terms of court. Section 9-5-91 was repealed; however, we do not interpret the repeal of § 9-5-91 to mean that chancellors no longer have the authority to hear divorce matters in vacation.

¶6. Elizabeth also contends that Miss. Code Ann. § 9-5-93 did not authorize the chancellor to hear the complaint and render a final decree of divorce. Section 9-5-93 states:

> Whenever the chancery court or chancellor has lawfully set any matter in vacation for confirmation or decree, and no contest has been timely filed, if an order or decree determining the same or setting another date therefor be not entered upon such date, the chancellor shall have the power to enter an

order or decree on any day prior to the adjournment of the next succeeding term, without further process. Provided, that if the matter be one in which contest might have been entered prior to the date set and such contest be filed before the entry of such order or decree, the same shall be disposed of as if such contest had been timely filed.

Miss. Code Ann. § 9-5-93 (1991).

¶7. Elizabeth argues that since § 93-5-17, quoted above, makes no reference to § 9-5-93 that section does not apply. Furthermore, she argues that there was no order setting the divorce hearing on September 27, 2000. The hearing was originally set for September 12, 2000. The chancery court rescheduled the hearing for a later, undetermined date.

¶8. Mark argues that Elizabeth's proposition that chancellors are not authorized to grant judgments of divorce while in vacation is ludicrous. He contends that to hold otherwise would void a large percentage of divorces granted in this state.

¶9. Because Elizabeth failed to timely answer the complaint and failed to contest the divorce decree until after the decree was entered, this Court finds that the chancellor did not err in holding the divorce hearing in vacation without her consent. We find that Elizabeth impliedly consented to the hearing in vacation by failing to contest the divorce to make a timely appearance before the chancery court.

¶10. Furthermore, the chancellor conducted a hearing on Elizabeth's motion to set aside the divorce decree. Mark admitted that he tried to discuss a proposed settlement agreement with Elizabeth the day before the September 27 hearing and that she would not sign the agreement without letting an attorney review it. However, as the chancellor concluded, Elizabeth was served with the complaint for divorce and failed to answer within 30 days. Mark tried to convince Elizabeth to sign a divorce agreement based on irreconcilable differences. The chancellor found that Mark told Elizabeth that if she did not sign the agreement, he "was going to go to the Court, wouldn't have to have her to go ahead and have the divorce." Elizabeth missed her first opportunity to contest the divorce. She was given a second chance to contest the divorce at the hearing on her motion to set aside the divorce decree. The record supports the chancellor's decision to deny the motion to set aside the divorce decree.

### II. WHETHER THE CHANCELLOR ERRED IN FAILING TO GIVE NOTICE TO ELIZABETH OF THE HEARING AND RENDERING OF THE DECREE OF DIVORCE.

¶11. In a case similar to the one before this Court, Ramona Stinson filed for divorce on the ground of adultery, and her husband Johnny Stinson was served with process but failed to answer the complaint or appear at the hearing. *Stinson v. Stinson*, 738 So.2d 1259, 1261 (Miss. Ct. App. 1999). The chancellor granted a divorce to Ramona even though Johnny did not have notice of the hearing on the divorce. *Id.* The Mississippi Court of Appeals upheld the divorce decree ruling that the husband was not entitled to notice of the hearing on the uncontested divorce matter. *Id.* This Court agrees that there is no obligation to send a notice of hearing to one who fails to make a timely appearance.

¶12. In *Rawson v. Buta*, 609 So. 2d 426, 430 (Miss. 1992), this Court held that the husband was entitled to present proof at trial rebutting the wife's allegations of habitual cruel and inhuman treatment despite the husband's failure to timely answer the complaint. The husband, Rawson, filed an answer a few days before the trial date. *Id.* at 428. He also appeared at the trial to contest the divorce. *Id.* at 429. However, the

chancellor heard the action as uncontested due to Rawson's failure to answer the complaint within the time prescribed by M.R.C.P. 12(a). *Id.* The wife's only corroborating evidence consisted of photographs depicting the alleged physical abuse. *Id.* The chancellor granted the divorce. *Id*. This Court found that the corroborating photographs were insufficient to support a grant of divorce. *Id.* at 430. Furthermore, this Court held that "[b]ecause of the special nature of a divorce proceeding, a defendant is not barred from defending the action upon failure to answer the complaint." *Id.* at 432.

¶13. According to Miss. Code Ann. § 93-5-7 (1994), in a divorce matter, no judgment by default may be granted, and a defendant is not required to answer a complaint. This does not mean that a claimant is barred from obtaining an uncontested divorce. According to Rule 55(e) of the Mississippi Rules of Civil Procedure, no judgment by default shall be entered against a party to a suit for divorce unless the claimant establishes his claim or rights to relief by evidence. M.R.C.P. 55(e). A divorce claimant must prove the allegations of the complaint, even when the defendant has failed to answer. As stated in *Rawson*, the rule for default judgments in divorce cases imposes special requirements. *Rawson*, 609 So.2d at 430. The claimant must present proof in open court. *Id.* Furthermore, a divorce will not be granted on the uncorroborated testimony of the claimant. *Anderson v. Anderson*, 190 Miss. 508, 200 So. 726, 727 (1941).

¶14. In the case sub judice, Elizabeth not only failed to answer the complaint, but she failed to make an appearance before the chancery court until after the decree of divorce was entered. *See Holmes v. Holmes*, 628 So.2d 1361, 1363 (Miss. 1993). Nevertheless, the chancellor allowed Elizabeth to testify in the subsequent hearing. At the hearing, Elizabeth failed to present a good reason for not making an appearance. Furthermore, Elizabeth failed to rebut any of the allegations in the original complaint. In fact, Elizabeth openly admitted that she committed adultery.

¶15. Although we have the order granting the uncontested divorce, there is no record of the original hearing before this Court. Therefore, without more, there would be no way of knowing whether Mark presented sufficient proof in the original hearing. However, in the subsequent hearing on Elizabeth's motion to set aside the default judgment, Elizabeth admitted to committing adultery. Furthermore, the subsequent hearing revealed that evidence of adultery was presented to the chancellor at the original hearing. In the original hearing, Elizabeth's own father appeared as a witness for Mark and corroborated the adultery charge. Based on the record of the hearing on Elizabeth's motion to set aside the default judgment, this Court finds that Mark's allegations were proven in open court. Furthermore, this Court finds that there was no obligation by the chancellor to send notice to Elizabeth of the hearing where Elizabeth failed to make a timely appearance.

### III. WHETHER THE CHANCELLOR ERRED IN ENTERING A FINAL DECREE OF DIVORCE AT THE TIME ELIZABETH WAS PREGNANT.

¶16. Elizabeth was pregnant at the time of entry of the divorce decree. However, after hearing arguments from both parties at the hearing on Elizabeth's motion to set aside the divorce decree, the chancellor found that no one knew about the pregnancy at the time and the pregnancy was not discovered until after the chancery court entered its decree. Uniform Chancery Court Rule 8.01 stated that a court may not grant a divorce if the mother is expecting a child at the time that the divorce is being heard or at the time the decree was entered. However, that rule has been deleted and is no longer in effect.

### IV. WHETHER, IN LIGHT OF TESTIMONY REVEALING THAT ELIZABETH AND

**MARK RESUMED SEXUAL RELATIONS, THE CHANCELLOR ERRED IN REFUSING TO SET ASIDE THE DIVORCE DECREE BASED ON THE DEFENSE OF CONDONATION.**

¶17. Elizabeth argues for the first time on appeal that, because she and Mark had sexual relations after he filed for a divorce on the ground of adultery, the divorce decree should have been set aside based on condonation. According to the record, Elizabeth and Mark did have sexual relations on September 17, 2000, after Elizabeth admittedly promised that she would cease her adulterous affair. However, Elizabeth continued her adulterous relationship the following day and at least up until, as admitted by Elizabeth, a week or two before the hearing conducted on December 4, 2000.

¶18. This Court has held that the defense of condonation can be avoided if after a resumption of cohabitation, the marital offense is repeated. *Wood v. Wood*, 495 So.2d 503, 506 (Miss.1986). *See also Harmon v. Harmon*, 757 So.2d 305, 309 (Miss. Ct. App. 1999). Thus, the chancellor did not abuse his discretion in refusing to set aside the divorce decree based on the defense of condonation.

## CONCLUSION

¶19. This Court finds that, based on Elizabeth's failure to contest the divorce and because she failed to make a timely appearance before the chancery court, in the form of an answer to the complaint or otherwise, the chancellor did not abuse his discretion by conducting a hearing on the divorce in vacation and without notice to Elizabeth. Elizabeth's pregnancy at the time of the divorce decree is of no consequence because Uniform Chancery Court Rule 8.01 has been abolished, and no one knew of the pregnancy until after the entry of the divorce decree. Furthermore, the defense of condonation was without merit because Elizabeth continued to commit the marital offense. Therefore, this Court affirms the judgment of the chancellor.

¶20. **AFFIRMED.**

> **PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

> **McRAE, PRESIDING JUSTICE, DISSENTING ON DENIAL OF REHEARING:**

¶21. Elizabeth Lindsey was pregnant when the Chancery Court of Tippah County granted a divorce in favor of her husband; however, she did not notify anyone of her pregnancy until after the decree had been entered. The chancellor noted at the hearing on the Motion to Declare Final Decree of Divorce Void that although there was once a Uniform Chancery Court Rule 8.01 "whereby no divorce would be granted or the Court may not enter a divorce if the mother is expecting a child at the time that the divorce is being heard or at the time the decree was entered[,]" since Mrs. Lindsey's pregnancy was not common knowledge until after the decree had been entered, issues such as the child's paternity, support and medical expenses could be taken up by the chancery court at another time. In denying Mrs. Lindsey's Motion for Rehearing, the majority agrees with the chancellor in saying this rule should not have been addressed. I respectfully disagree.

¶22. The chancellor should not have granted the divorce in this case without at least considering the fact that Mrs. Lindsey was pregnant. Even though Rule 8.01 has been abolished since the late 1980s, equitable

principles still govern. Additionally, this Court has ruled that our foremost consideration is the best interest of the child. What of the ramifications this divorce might have on the child? There is a presumption that a child conceived in wedlock is the legitimate offspring of the couple, even after divorce. But, in this case, Mrs. Lindsey had already admitted adultery, and either Mark Lindsey or her paramour could be the father. What does that mean for her unborn child? Should the Lindseys have to go back to court to determine the identity of the child's father? Who is going to pay child support and expenses after the birth of this child? Mrs. Lindsey's post-trial motion was timely, and, as such, the trial court should have considered how granting the parties' divorce would affect the child, and in doing this should have used former Rule 8.01 as an equitable principle.

¶23. Accordingly, I dissent from the denial of rehearing.

**EASLEY, J., JOINS THIS OPINION.**